**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES,<br><br>            **Plaintiff**<br><br>    v.<br><br>ROGELIO ESPINOZA-BAZA,<br><br>            **Defendant** | CASE NO. 1:08-CR-0351 AWI<br>              1:12-CV-1372<br><br>**ORDER RE: HABEAS CORPUS PETITION**<br><br>**(Docs. 97, 98, and 99)** |

**I. Background**

Petitioner was born in Mexico. His family moved to the United States when he was a minor. In 2002, he was convicted of drug-related offenses and deported to Mexico. Petitioner then illegally reentered the United States. In 2005, he was convicted of assault with a deadly weapon and again deported. He again illegally reentered the United States and was again arrested for disturbing the peace and evading a peace officer.

Petitioner was then charged with two counts of being a deported alien found in the United States in violation of 8 U.S.C. § 1326(a) and (b)(2) with reference to the 2002 and 2005 deportations. Doc. 43-2, Second Superseding Indictment. A jury trial was held May 5-7, 2009. Petitioner was convicted on both counts. Sentencing was held on September 21, 2009. Petitioner was sentenced to 96 months imprisonment on each count; the sentences were to run concurrently. Doc. 72. Petitioner appealed his conviction and his sentence. Doc. 74. The Ninth Circuit affirmed both the conviction and the sentence. Doc. 94.

Petitioner has now made a timely motion for habeas corpus relief under 28 U.S.C. § 2255. Doc. 98. He makes three claims: (1) "Mr. Espinoza-Baza was violated of his 'Sixth Amendment'

right to effective assistance of counsel"; (2) "The 16 level enhancement of count 1 of indictment for conviction for a 'possession of a controlled substance for sale' is improper"; and (3) "The 16 level enhancement of count 2 of indictment for conviction of a 'crime of violence' is improper." Doc. 98, Petition, 7, 10 , and13.  Petitioner also seeks in forma pauperis status and access to additional documents. Docs. 97 and 99.

## II. Legal Standard

Title 28 U.S.C. § 2255 provides, in pertinent part: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence." Habeas relief is available to correct errors of jurisdiction and constitutional error but a general "error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979).

Courts must "construe pro se habeas filing liberally." Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir.2003). Under Section 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir.1994), quoting 28 U.S.C. § 2255. The court may deny a hearing if the petitioner's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir.1996), citations omitted.  Mere conclusory statements in a Section 2255 motion are insufficient to require a hearing. United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir.1980).  Under Rule 4(b) of the Rules Governing Section 2255 Proceedings, when a court receives a section 2255 motion, the court must initially screen it, and dismiss it summarily if it plainly appears that the moving party is not entitled to relief. See U.S. v. Quan, 789 F.2d 711, 715 (9th Cir.1986).

The U.S. Supreme Court has stated that "federal habeas is a guard against extreme malfunctions in the...criminal justice systems, not a substitute for ordinary error correction through appeal." Ryan v. Gonzales, 133 S.Ct. 696, 708 (2013). Accordingly, a criminal who fails to raise a claim on direct appeal will be found to have procedurally defaulted that claim, and may raise that claim on collateral review "only if the defendant can first demonstrate 'cause' and actual 'prejudice' or [can show] that he is 'actually innocent.'" United States v. Braswell, 501 F.3d 1147, 1149 (9th Cir. 2007), quoting Bousley v. United States, 523 U.S. 614, 622 (1998).

### III. Discussion

**A. Ineffective Assistance of Counsel**

Petitioner's first claim is IAC. The U.S. Supreme Court has explained that "The procedural default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments. We conclude that requiring a criminal defendant to bring ineffective-assistance-of-counsel claims on direct appeal does not promote these objectives....an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003).

To succeed on an IAC claim, "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential....a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any

given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland v. Washington, 466 U.S. 668, 689 (1984).

Substantively, Petitioner explains

> 1. Mr. Espinoza-Baza was lead by counsel to believe that his main defense would be admissible and therefore would be able to present it to a jury at trial.
>
> 2. Counsel moved forward with a defense that would prove to be fruitless, and never given the opportunity to present to jury due to District Court excluding evidence, and granting the governments 'motion in limine.'
>
> 3. Counsel proceeded with his performance, which fell below an objective standard of reasonableness.
>
> 4. In this case Mr. Espinoza-Baza had self admitted to both counts to agents and had taken steps accepting a plea deal. Therefore the outcome would have been a significant difference.

Doc. 98, Petition, 8.  During the trial, Beevers's main defense argument was that Petitioner had derivative U.S. citizenship through his mother's side of the family.  Beevers argued that Petitioner's grandfather was born in Texas and passed on U.S. citizenship to his daughter and she in turn passed it on to her son, Petitioner.  The prosecution made a motion in limine that sought to exclude the evidence supporting this theory.  This motion was not resolved until the middle of the trial, after the prosecution had rested its case in chief.  After listening to Beevers's outline of the defense's evidence, this court found that there was sufficient proof of the grandfather's Texas birthplace (potentially giving the grandfather U.S. citizenship) but insufficient proof of the grandfather's residency in the United States prior to his daughter's birth (which goes to the mother's citizenship status):

> if that were the only issue, was he [grandfather] or was he not born in the United States, I think that would be an issue for the jury. What I'm concerned about in terms of the residency, there apparently is no evidence of that in terms of the length. And as I said earlier, the defense doesn't have to prove anything in terms of the residency, but there's got to be enough evidence for me to say, okay, that's enough of an issue you to send to the jury. *I'll tell you that's a close call*, but that's what I'm determining, just based upon what I have seen in case authority or the proffer presented by the defense. So I'm not saying that there is a burden on the defense. Certainly, the defense can challenge alienage by some evidence. The question is how much evidence do I have to see in terms of a proffer before I can allow it to go to a jury.

Doc. 84, May 6, 2009 Transcript, 174:7-21, emphasis added.  This court then determined that the issue of derivative citizenship was definitively decided in favor of the prosecution: "in terms of a

4

derivative citizenship issue, that's no longer a matter that would go to the jury." Doc. 84, May 6, 2009 Transcript, 177:15-16.

Whether to permit Petitioner to raise the defense of derivative citizenship based on the evidence proffered was a close call at trial.  It was not objectively unreasonable for Beevers to pursue this line of argument.  Conversely, courts have found that counsel demonstrates deficient performance for IAC when he/she allows a client to plead guilty without researching and advising of a potential derivative citizenship defense. See United States v. Juarez, 672 F.3d 381, 386-88 (5th Cir. 2012); Rosell-Fernandez v. United States, 2008 U.S. Dist. LEXIS 34913, *7 (S.D. Cal. Apr. 28, 2008).  Derivative citizenship would have been a complete defense to both counts Petitioner was convicted of.  Unfortunately, the motion in limine was not resolved until the middle of the trial itself, due to no fault of Beevers.  Under the circumstances, Beevers's performance did not fall "below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984).  As Petitioner can not show that his legal counsel was deficient, the court does not examine the issue of prejudice.

**B. Sentencing**

Petitioner's second and third claims are based on objections to sentencing.  Petitioner admits that he has not raised these objections to his sentence in his direct appeal. Doc. 98, Petition, 11 and 14.  For both of these alleged sentencing errors, Petitioner states "Appointed counsel did not present to Court of Appeals. Even though Mr. Espinoza-Baza made formal objections to this same ground in his Pre-Sentence Report and Sentencing hearing." Doc. 98, Petition, 11 and 14.  "[A]n attorney's errors during an appeal on direct review may also provide cause to excuse procedural default; for it the attorney appointed to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to obtain an adjudication on the merits of his claims." Martinez v. Ryan, 132 S.Ct. 1309, 1317 (2012), citing Coleman v. Thompson, 501 U.S. 722, 754 (1991).

> If a criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must demonstrate both cause excusing his procedural default, and actual prejudice resulting from the claim of error.

> Generally, to demonstrate 'cause' for procedural default, an appellant must show that some objective factor external to the defense impeded his adherence to the procedural rule. However, if the record shows that an appellate counsel's performance fell below the standard of competency of counsel set forth in Strickland v. Washington or that he was denied representation by counsel on appeal altogether, he has demonstrated cause for his procedural default. Thus, to determine whether [petitioner] has demonstrated cause and prejudice for his failure to raise his claims of error in his direct appeal, we must decide whether he was denied effective assistance of appellate counsel.

United States v. Skurdal, 341 F.3d 921, 925-26 (9th Cir. 2003), citations omitted.

Petitioner can not avoid procedural default because he can not establish prejudice. Where a federal habeas petitioner fails to show either that he had good cause for failing to assert a claim on direct appeal or that the inability to assert that claim on collateral review would prejudice him, the court need not consider the other prong of the procedural default analysis. US v. Frady, 486 U.S. 152, 167 (1982) (ignoring the cause prong and affirming the dismissal of a habeas petition on the ground that the petitioner had not shown prejudice).

**1. Sentencing for Count 1**

Count 1 was based on Petitioner's deportation in 2002 for drug related crimes. Petitioner's claim regarding sentencing is convoluted. He states:

> The 16 level enhancement of count 1 of indictment for conviction for a 'possession of a controlled substance for sale' is improper.....
>
> 1. Under the 2006 guideline book which would apply to a March 2007 found date, offense level [for] that conviction would be only Level 12 for re-entry after felony conviction.
>
> 2. This ground would be moot, since the court grouped both offenses under § 3D1.1. And was given a two-level upward departure because of § 3D1.4.
>
> 3. Earlier conviction would be more than 9 levels less serious than that the later re-entry conviction, so it would not increase the final offense level under grouping rules.

Doc. 98, Petition, 10-11.

Petitioner does not appear to describe the sentencing calculations correctly. Contrary to Petitioner's assertion, the two counts were not put into a single group as they were not closely related counts within the meaning of U.S. Sentencing Guidelines Manual §3D1.2 (2008). Doc. 88, Sentencing Transcript, 39:4-7. The two counts were considered as two separate groups, each with

an offense level of 24.  Under Section 3D1.4, the second group, having the same offense level as the first group, counted as two units, which increased the total offense level by 2, yielding a combined offense level of 26 (before the reduction for acceptance of responsibility).  Looking specifically at count 1, the base offense level is 8, and Petitioner received a 16 level enhancement pursuant to Section 2L1.2(b)(1)(A)(i) for "a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months."  Petitioner appears to argue that under the 2006 edition of the Sentencing Guidelines, he would have received a lower offense level enhancement for count 1.  Instead of a total of 24 (8 plus 16 level enhancement), he would have presumably received a total of 12 (8 plus 4 level enhancement).  Then, under Section 3D1.4, the first count (level 12) would have been less serious than the second count (level 24) by at least 9 levels, which would meant the first count would constitute zero units, leaving the total combined offense level at 24.  A 4 level enhancement under Section 2L1.2(b)(1)(D) is imposed after "a conviction for any other felony," which excludes drug trafficking offenses.  However, because his conviction was for a drug trafficking offense, Petitioner received a 16 level enhancement under Section 2L1.2(b)(1)(A)(i) instead.

In terms of procedure, Petitioner asserts that the 2006 edition of the Sentencing Guidelines should be used.  "Normally, a district court is to apply the version of the Sentencing Guidelines in effect on the date of sentencing.... We have recognized an exception to this rule in cases where amended versions of the Sentencing Guidelines are ex post facto." United States v. Warren, 980 F.2d 1300, 1304 (9th Cir. 1992); see also United States v. Mix, 457 F.3d 906, 911 (9th Cir. 2006).  The Presentence Investigation Report used the 2008 edition of the Sentencing Guidelines (effective November 1, 2008) as Petitioner was sentenced on September 21, 2009. Doc. 72.  The language of Section 2L1.2 did not change between the 2006 and 2008 editions; there were minor changes to the application notes that do not appear to affect this habeas petition.  There is no ex post facto issue so use of the 2008 edition was proper.

In terms of substance, Petitioner appears to be arguing that his prior conviction should have been considered a generic felony rather than a drug trafficking felony.  Count 1 of the applicable indictment stated:

7

> Defendant herein, an alien, on or about January 28, 2002, was excluded, deported, or removed from the United States after being convicted of one or more crimes punishable by a term of imprisonment exceeding one year, specifically:
>
> Possession of a controlled substance for sale in violation of California Health and Safety Code § 11351, on or about March 11, 1999, in the Superior Court of California, County of Tulare, and the defendant was sentenced to 270 days imprisonment (Case No. CR-F-99-43103); and possession for sale of a controlled substance, to wit, heroin, in violation of California Health and Safety Code § 11351, on or about December 22, 1999, in the Superior Court of California, County of Tulare, and the defendant was sentenced to three years imprisonment (Case No. 99-0050913);
>
> And thereafter on or about September 7, 2004, the defendant was found within the State and Eastern District of California...

Doc., 43-2, Second Superseding Indictment, 1:26-2:9.  At sentencing, Petitioner argued, "Since a person can be guilty of the crime of possession of a controlled substance with intent to distribute in California although actually guilty only as an accessory after the fact, the fact of the conviction (without the plea hearing transcript that contains a factual basis) does not establish that the defendant was not convicted as an accessory after the fact. Under the Ninth Circuit's categorical approach, the absence of the factual basis prevents this Court from using these convictions as an aggravated felony to calculate the guidelines for Count I." Doc. 64, Petitioner Objection to Presentence Investigation Report, 3:19-25.  The court assumes that this objection forms the substance of Petitioner's claim.

For determining whether a prior conviction qualifies under Section 2L1.2(b)(1)(A)(i), the Ninth Circuit uses a categorical analysis and a modified categorical analysis: "We first apply the categorical analysis.  Under this approach, we 'do not examine the facts underlying the prior offense, but look only to the fact of conviction and the statutory definition of the prior offense.' If the statutory definition of the prior offense criminalizes conduct that would not constitute a 'drug trafficking offense,' then the statute is not a categorical fit, and we must consider whether the prior conviction may still be used for a sentencing enhancement using the modified categorical approach. We may not use the conviction for a sentencing enhancement unless 'the record includes documentation or judicially noticeable facts that clearly establish that the conviction is a predicate for enhancement purposes.'" United States v. Leal-Vega, 680 F.3d 1160, 1163-64 (9th Cir. 2012), citations omitted.  Cal. Health & Safety Code § 11351 is subject to the modified

categorical approach as "Section 11351 is categorically broader than the Guidelines definition of 'drug trafficking offense' because it criminalizes possession or purchase of certain substances that are not covered by the [federal Controlled Substances Act]." United States v. Leal-Vega, 680 F.3d 1160, 1167 (9th Cir. 2012). Here the Government has provided an abstract of judgment and the felony complaint. Doc. 24-11. These documents may properly be consulted in undertaking a modified categorical analysis. United States v. De La Torre-Jimenez, 771 F.3d 1163, 1167 (9th Cir. 2014). The felony complaint filed December 9, 1999, charged Petitioner with a "violation of Health and Safety Code Section HS11351, a FELONY" as he "did unlawfully possess for sale and purchase for sale a controlled substance, to wit: HEROIN" while the abstract reflects that Petitioner plead guilty to that charge on December 22, 1999. Doc. 24-11. At the sentencing hearing, Petitioner admitted that he was "convicted of possessing heroin for sale in 2000." Doc. 88, Sept. 21, 2009 Transcript, 13:15-17. Heroin is a listed controlled substance under 21 U.S.C. § 812(c). This constitutes sufficient evidence to support application of Section 2L1.2(b)(1)(A)(i).

Petitioner's argument concerning an accessory after the fact is based on a misunderstanding of the case law. Section 11351 does not qualify for a categorical analysis because it exceeds the bounds of Section 2L1.2(b)(1)(A) by covering substances not included in the Controlled Substances Act. That is the only dimension in which Section 11351 goes beyond Section 2L1.2(b)(1)(A). The issue with accessories after the fact arises under another enhancement provision which covers "a conviction for an aggravated felony." U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(C) (2008). The Ninth Circuit has determined that an accessory after the fact does not constitute an "aggravated felony" and so a modified categorical approach applies to convictions that could be based on accessory after the fact liability when a court is applying enhancement under Section 2L1.2(b)(1)(C). United States v. Vidal, 504 F.3d 1072, 1074-75 (9th Cir. 2007). In Petitioner's case, the enhancement was under Section 2L1.2(b)(1)(A)(i) and not Section 2L1.2(b)(1)(C).

**2. Sentencing for Count 2**

Count 2 was based on Petitioner's deportation in 2005 for drug related crimes and assault

with a deadly weapon.  Petitioner was given a 16 level enhancement under Section 2L1.2(b)(1)(A) for "a conviction for a felony that is...(ii) a crime of violence" which Petitioner argues was unwarranted:

> The 16 level enhancement of count 2 of indictment for conviction of a 'crime of violence' is improper....
>
> 1. Immigration sentence cannot be enhanced for prior sentence of probation even though probation was later revoked.
>
> 2. Enhancement is improper, because at the time Mr. Espinoza-Baza was deported and at the time he re-entered the country, he had received a sentence of (3) years probation and 360 days of actual time served.
>
> 3. Mr. Espinoza-Baza had been in the country illegally for over (2) years before his probation was revoked and later given a sentence that exceeded 13 months.
>
> 4. The offence of Illegal-Re-entry cannot be triggered by unrelated conduct that occurs long after Re-entry.  In this case the revocation of probation.

Doc. 98, Petition, 13.  Petitioner appears to argue that because he was initially given a sentence of probation for the assault with deadly weapons conviction, Section 2L1.2(b)(1)(A)(ii) should not apply.  However, unlike the drug trafficking enhancement under Section 2L1.2(b)(1)(A)(i) which requires an actual 13 month sentence of imprisonment, the crime of violence enhancement under Section 2L1.2(b)(1)(A)(ii) only requires that the conviction be for a qualifying felony.  The applicable notes define "felony" as "any federal, state, or local offense punishable by imprisonment for a term exceeding one year." U.S. Sentencing Guidelines Manual § 2L.2 cmt. n.2 (2008).  Petitioner's conviction, "assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment." Cal. Penal Code §245(a)(1).  The enhancement under Section 2L1.2(b)(1)(A)(ii) was appropriate.

**C. Certificate of Appealability**

Unless a circuit justice or district judge issues a certificate of appealability ("COA"), an appeal may not be taken to the court of appeals from a final decision of a district judge in a habeas corpus proceeding. See 28 U.S.C. § 2253(c)(1); Muth v. Fondren, 676 F.3d 815, 818 (9th Cir.

2012).  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2).  To do so, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Slack v. McDaniel, 529 U.S. 473, 479 (2000).  The Ninth Circuit will not act on a motion for a COA if the district court has not ruled first. See Ninth Cir. R. 22-1(a); Wilson v. Belleque, 554 F.3d 816, 827 (9th Cir. 2009).  The issuance of a COA has been described as a "rare step." Murden v. Artuz, 497 F.3d 178, 199 (2nd Cir. 2008).

Here, jurists of reason would not find it debatable that Petitioner has failed to show a denial of a constitutional right.  Accordingly, a certificate of appealability is denied.

**D. Other Motions**

Petitioner has made a request for in forma parperis status. Doc. 99.  For habeas petitions filed under Section 2255, "There is no filing fee required of a movant under these rules." Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 3, Advisory Committee Notes.  As this habeas is resolved solely on the petition, the court need not consider Petitioner's request.  Similarly, Petitioner's request for additional documents need not be addressed. Doc. 97.

**IV. Order**

Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 21 U.S.C. § 2255 is DENIED.  Petitioner's request for access to additional documents is DENIED. Petitioner's request for in forma pauperis status is DENIED.

The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   June 26, 2015                                      _____
                                                                                  SENIOR DISTRICT JUDGE